**DURKEE v. WELCH, Collector of Internal Revenue.**

No. 2928–M.

District Court, S. D. California, S. D. March 25, 1931.

A. L. Weil, of San Francisco, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., and Ignatius F. Parker, Asst. U. S. Atty., both of Los Angeles, Cal., and Alva C. Baird, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

McCORMICK, District Judge.

Plaintiff sues defendant collector to recover $4,097.25, that was paid under protest as and for income taxes for the year 1925. Plaintiff filed a claim for refund which has been disallowed by the defendant collector. The pertinent facts may be epitomized as follows: On December 15, 1922, the General Petroleum Company, a corporation, by whom the plaintiff was employed at that time, authorized plaintiff to subscribe for 1,000 shares of its common capital stock at the par value of $25 per share. It was agreed that plaintiff should pay said purchase price of $25 per share in installments running over a period of eight years or less under certain optional rights of plaintiff, the payments of the purchase price to be made by deduction from the semimonthly salary pay checks issued to plaintiff by the oil company for serices rendered to it by the plaintiff. The dividends declared on the stock during the process of installment payments were to be credited to plaintiff, and it appears that as to such dividends plaintiff accounted for the same in his annual income tax returns. The stock purchase arrangement further provided that plaintiff should be charged interest on all unpaid balances of the purchase price of the stock at the rate of 6 per cent. per annum.

On May 19, 1925, the full purchase price of the shares having been paid by plaintiff, certificates for 1,000 shares of stock in the company were delivered to him. On that day the market value of the stock was $52.25 per share. The plaintiff did not sell his stock, but continued to hold it all during the year 1925 and did not actually realize and take any profits thereon.

The collector of internal revenue held that plaintiff must account for an alleged profit measured by the difference between what he paid for the stock and the market value thereof on the day the certificates were delivered to him. In other words, the commissioner has treated the difference between the cost of said stock ($25 per share) and its market value ($52.25 per share) on the day of delivery of the certificates of stock to plaintiff in 1925, as a taxable income to him in that year, although plaintiff has not sold the stock and has not actually and physically realized this profit.

The defendant collector offered in evidence, subject to objection of plaintiff, three earlier plans wherein the General Petroleum Company had offered to all its employees opportunities to subscribe for its stock. In such other plans, the employee was given a bonus by the company to apply on the subscription price which was measured by the years of service of the employee with the company. It is clear that these other plans are disassociated with the plan of December 15, 1922, and are immaterial to the issue now before the court. The consideration of such earlier plans does not illuminate the question

submitted for decision herein. The objection of plaintiff to evidence of such other, earlier, and different plans than that set out in the complaint herein is therefore sustained and an exception is hereby noted for defendant. In the decision of this case no consideration, weight, or effect is given to such prior transactions.

The plan involved in this case does not present any question of bonus or profit sharing as such terms are used in income tax matters. The corporation offered an opportunity to its employees, in order to arouse their interest in the welfare of the company and to increase their efficiency as workers therein, to become participants in its prosperity by purchasing its common capital stock and by paying the full par value thereof out of their own money. There was no gift of the stock and there was no distribution of it as a bonus. The right or privilege conferred upon such employees was substantially the same as corporate transactions whereby stockholders are permitted to subscribe at par for stock which is worth more than par in the market. Such transactions result in no taxable income to the purchasing stockholders until they shall have sold their stock and actually realized a profit thereon. Miles v. Safe Deposit Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. I see no reason for discriminating between stockholders of a corporation who are thus permitted to purchase stock at par and employees of a corporation who are permitted to do the same thing.

In the arrangement under consideration there was no profit sharing as that term is employed in income tax legislation and particularly in section 219(f) of the Revenue Act of 1924 (26 USCA § 960 note), under which the defendant assumed to assess and collect the income tax from plaintiff. Profit sharing ordinarily signifys the participation of employees with their employer in a given share of the profits of an enterprise by reason of their labor and not by reason of their capital investment therein. Moreover, the term "profit sharing" does not imply the idea that the employee is to bear any part of the losses. In this plan, however, the employee subjected himself to the burden of loss just as much as he enabled himself to enjoy the benefit of profit. The general understanding of a profit-sharing arrangement between employers and workers is that the worker shall share in earnings and profits of his employer, but is not accountable or liable for losses or deficits in the business, and there is also generally present in profit-sharing transactions the element of contribution by the employer to the project. This latter element is missing in the plan involved in this case. It is incorrect to state that the plaintiff received his stock as part of a profit-sharing plan in the nature of compensation for service rendered as an employee of long standing, because under the terms of the arrangement plaintiff could have paid the full amount of the purchase price the day after he made his subscription and could have taken his stock at that time and could have left the employ of the company. Under such circumstances, it cannot be said that the stock is in reality compensation for future services, or that any value of the stock in excess of the amount paid for it was additional compensation.

The only decided case that I have found that involved income tax questions similar to those in this action is Schaefer v. Bowers (D. C.) 41 F.(2d) 803, 805. That was a case that involved a stock acquisition plan, the general purpose of which was to enable employees to become stockholders on favorable terms where a certain amount was deducted from their compensation and placed in a fund to their credit to which the company added a sum equal to 50 per cent. of the deposit of the employee as additional compensation. This fund was to be applied to purchase of capital stock at a price fixed by the directors of the corporation. The participating employee remaining in the service of the company until the termination of the plan was entitled to receive capital stock and cash from the fund as his interest might then appear. Judge Bondy, in ruling upon a motion to dismiss a complaint whereby an employee sought to recover a sum of money paid to the collector of internal revenue as tax on income on account of said stock distributions made to him under such an arrangement, said:

"The complaint and the plan state that the purpose of the plan was to enable employees to become stockholders on the terms stated. No statement made in the complaint or in the plan is inconsistent with such purpose. Participation in the plan constituted the acceptance of an offer, and created a contract for the acquisition of stock by the participating employee on the terms and conditions and in the manner stated in the plan, irrespective of the market value of the stock at the time the plaintiff became entitled to the possession thereof or acquired any interest therein. He acquired the stock at the time when, and at a price at which, the company agreed to sell it. The mere fact that

he acquired it at a price less than that for which he could have sold it when it was delivered to him, under the terms of the agreement, did not constitute any profit or income subject to a tax.

"Appreciation in the value of property is not income within the meaning of the Constitution and Revenue Acts until actually realized by sale or other disposition of the property. Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

"The trustees were not authorized to sell any of the stock acquired by them for the fund. The stock in kind was distributable, not the proceeds thereof.

"Section 219(f) of the Revenue Acts of 1924 and 1926 (26 USCA § 960 note), exempting from taxation under that section trusts created for the purpose of distributing to employees the earnings and principal of the fund accumulated by the trust, provides: 'The amount actually distributed or made available to any distributee shall be taxable to him in the year in which so distributed or made available to the extent that it exceeds the amounts paid in by him.' This provision has no reference to unrealized enhancement of the value of specific property bought with such amounts.

"The words 'amount actually distributed' mean the amount of money consisting of the earnings and principal of the fund distributed, and not the current market value of stock purchased with such earnings and principal.

"In accordance with the provisions of this statute, the dividends, interest, withdrawal accruals, and the company's contributions were not taxable until the year when distributed.

"The legal effect of the plan was the same as if amounts contributed by the company had been actually received by the employee, and, together with his own savings, had been invested in stock of the company. The fact that the investment was accomplished through the instrumentality of the trust plan did not affect the nature of the investment."

It seems to me that if the plan under consideration by the District Court in the above case did not justify the imposition or collection of an income tax on the increased value of the stock over the purchase price paid by the employee, it is clear that the action of the defendant collector in this case is wholly unjustifiable. I find all of the facts as contended for by plaintiff. It is ordered that he have judgment for the amount sued for according to the prayer of the complaint.

There is one further matter submitted for decision by the stipulation of facts herein that has not been adverted to or ruled upon. The objection of plaintiff as to that portion of the stipulation of facts on page 4 thereof reciting the number of shares of common stock of the company that were subscribed for by its employees under the plan of December 15, 1922, is overruled, and an exception is noted to the aforesaid ruling.

Attorneys for plaintiff will prepare, serve, and present findings and judgment as prayed for in the complaint.