ROSSHEIM v. COMMISSIONER OF IN-
TERNAL REVENUE.

COMMISSIONER OF INTERNAL REVE-
NUE v. ROSSHEIM.

Nos. 6084, 6085.

Circuit Court of Appeals, Third Circuit.

Sept. 10, 1937.

Lawrence A. Baker, and John A. Selby, both of Washington, D. C. (John P. Connelly, of Philadelphia, Pa., and Henry Ravenel and Henry H. Elliott, both of Washington, D. C., of counsel), for Rossheim.

Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch, and F. E. Youngman, Sp. Assts. to Atty. Gen., for the Commissioner.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

These cases are here on cross-appeals from an order of redetermination of the Board of Tax Appeals in which it found that Rossheim was liable for a deficiency of $45,690.83 in his income tax for 1928. Rossheim is appealing because the Board found any deficiency at all. The Commissioner is appealing because the Board did not find a deficiency of $60.087.71.

The facts of this case give rise to three possible solutions, and, therefore, three questions. The first is whether or not the difference between the market value of certain stock purchased by Rossheim in 1928, and the price he paid for it, constituted taxable income for that year. The second is whether or not the difference between the amount this stock cost the corporation from which Rossheim purchased it, and the price he paid for it, constituted income for that year. And the last question is whether or not Rossheim realized any taxable income at all from the purchase of this stock.

The facts are as follows: Rossheim rose from the position of law clerk in the firm of Stern & Wolf in 1919 to the position of treasurer of the Stanley Company of America, hereinafter called the Stanley Company, a corporation owning and operating a number of moving picture theaters. In January, 1928, due to a dispute between rival factions of stockholders, he was appointed president as a compromise candidate. In that position his salary was $65,-000 a year together with $10,000 a year for expenses. He owned relatively few shares of the stock of the Stanley Company. In May, 1928, upon the instigation of one of the directors, an oral option agreement was entered into between Rossheim and the directors and principal stockholders. The terms of the contract gave Rossheim an option to purchase 10,000 shares of the stock of the Stanley Company for $40 a share, when it should sell on the market, in lots of 1,000 shares, for $55 per share. At the time the option was given, the market quotations on the stock ranged between 30½ and 45. There is no evidence that would indicate that $40 was not a fair price at that time. Furthermore, it appears in the agreed statement of evidence that Rossheim did not threaten to resign, nor did he bring any other pressure to bear on the directors or stockholders in order to obtain this option; that the business affairs of the Stanley Company were transacted in a very informal manner; that the Stanley Company did not give bonuses to, nor enter into employment contracts with, its officers; and that Rossheim considered this option as an opportunity to make a heavy investment in a company of which he was president, "if as a result of prolonged effort on his part * * * and the indications were that it would require a prolonged effort on his part. * * *" the market

price should advance 40 per cent. above the level at that time. The option also provided that if Rossheim resigned it would be null and void, and in any event it was to expire by December 31, 1929.

In August, 1928, the Stanley Company found itself in financial difficulties. The company's bankers, E. B. Smith & Co., of Philadelphia and New York, could not finance it in a manner satisfactory to the board of directors, and negotiations were entered into with the firm of Goldman, Sachs & Co., of New York, hereinafter called Goldman, Sachs. Rossheim took no active part in these negotiations. Goldman, Sachs was banker for Warner Brothers Pictures, Inc., hereinafter referred to as Warner Brothers. As the negotiations progressed it became probable that, under the new plan of financing, Warner Brothers would purchase control of the Stanley Company. Rumor to this effect caused the market quotations on the Stanley Company stock to rise to $55 per share, the goal set in the option agreement.

Rossheim became desirous of having his option in writing and on September 12, 1928, the board of directors of the Stanley Company passed a resolution giving Rossheim an option to purchase the stock as had been orally agreed to and on September 26, 1928, it passed another resolution further confirming the option.

On October 15, 1928, in view of the agreements to be entered into by the Stanley Company with Warner Brothers, the Stanley Company and Rossheim entered into an agreement which, among other things, provided that:

"Now, Therefore, in consideration of the premises it is hereby mutually covenanted and agreed between Stanley and Rossheim as follows:

"1. In the event the Exchange, Deposit and Purchase Agreements for the acquisition by Warner Bros. Pictures, Inc., of a majority of the shares of capital stock of Stanley shall be consummated, Stanley hereby agrees to purchase from Goldman, Sachs & Co., New York City, 8,000 shares of preferred stock and 800 shares of common stock of Warner Bros. Pictures, Inc., for a gross consideration equal to the purchase price paid by Goldman, Sachs & Co., on September 26, 1928, for 10,000 shares of Stanley. * * *

"2. In such event, and in satisfaction of said option Rossheim covenants and agrees with Stanley to purchase from Stanley

* * *, and Stanley agrees to sell and deliver to Rossheim 8,000 shares of preferred stock and 800 shares of common stock of Warner Bros. Pictures, Inc., for the price or sum of * * * ($285,000) * * *."

The deal with Warner Brothers was consummated. The Stanley Company purchased 10,000 shares of its own stock and exchanged it with Goldman, Sachs, as provided in the agreement, for 8,000 shares of the preferred and 800 shares of the common stock of Warner Brothers. The Stanley Company paid a net amount of $477,212.50 on this deal. In accordance with his agreement with the Stanley Company, Rossheim paid that company $285,000 and received the stock of Warner Brothers which at the time had a market value of $528,000.

Rossheim, having inadequate personal resources, borrowed $292,000 to carry out his end of the deal. He had to deposit all the stock so purchased to secure the loans.

In his 1928 income tax return, he did not report any income from the above transactions. In 1929 and 1930, however, he sold some of the stock at a profit which he reported in his income tax returns for those years.

The Commissioner determined that the difference between the $471,212.50 expended by the Stanley Company for the stock, and the $285,000 paid therefor by Rossheim, namely, $186,212.50, constituted taxable income in 1928. On this basis he found that Rossheim was liable for a deficiency of $45,690.93.

Rossheim appealed to the Board of Tax Appeals. During the proceedings the Commissioner filed an amended answer requesting that the income received by Rossheim "be increased by $57,587.50 over that proposed in the sixty day letter." The basis for the amended answer is the contention of the Commissioner that the difference between the market value of the stock ($528,800) and the amount paid by Rossheim ($285,000), which is $243,800, constituted taxable income in 1928.

The Board determined that Rossheim was liable for a deficiency of $45,690.83. It reasoned that since an option contract must be supported by consideration, the consideration must have been services, and that therefore the option amounted to a contract for services. Two members dissented from the majority opinion.

The majority opinion relied upon the cases of Albert Russel Erskine v. Com'r,

26 B.T.A. 147, and Omaha National Bank et al., Executors, v. Com'r, 29 B.T.A. 817. This latter case has, however, been reversed by the Circuit Court of Appeals for the Eighth Circuit since the Board published its opinion in the case at bar. Omaha National Bank v. Commissioner, 75 F.(2d) 434, 436. In reversing the decision of the Board, Judge Sanborn, speaking for the court, said: "Where the stock was delivered under contract of purchase and the taxpayer became the owner of it because of his agreement to purchase, the difference between what he paid for the stock and what the stock was worth was not a taxable gain. * * * It would become a taxable gain in the year that the stock was sold by the taxpayer, provided that the gain had not evaporated by that time."

The other case relied upon by the Board in its majority opinion is clearly distinguishable from the case at bar because the option was given for a price far below the actual value of the stock at that time, D. C. Bothwell v. Com'r, 27 B.T.A. 1351, 1356, but in the case before us, it was given at the approximate market price.

There is no allegation or charge of bad faith with reference to either Rossheim or others connected with this transaction, nor is there any evidence that the option was given for any other purpose than that ascribed by Rossheim, namely, to give him, as an officer of the corporation, an opportunity to acquire a substantial interest therein, if he could effect a 40 per cent. increase in the value of the stock.

Since the option was given at the approximate market value of the stock at that time and the sale of it was later made in good faith and in accordance with the terms of the contract, Rossheim did not receive any taxable income in 1928. His first tax liability arose in 1929 and 1930 when he sold some of the stock at a profit which he reported. Rose v. Trust Company of Georgia, 28 F.(2d) 767 (C.C.A.5); Taplin v. Commissioner, 41 F.(2d) 454 (C.C.A.6); Durkee v. Welch (D.C.) 49 F.(2d) 339; Commissioner v. Van Vorst, 59 F.(2d) 677 (C.C.A.9); Omaha National Bank v. Commissioner, supra; D. C. Bothwell v. Com'r, supra.

The order of redetermination of the Board of Tax Appeals is therefore reversed, and the income tax return of Rossheim is hereby reinstated.