## SMITH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10478.

Circuit Court of Appeals, Ninth Circuit.

May 25, 1944.

Clarence D. Phillips, of Portland, Or. (Griffith, Peck, Phillips & Nelson, of Portland, Or., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, Helen Goodner, and James P. Garland, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, DENMAN and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Here for review is a decision of the Tax Court of the United States which determined that there were deficiencies in respect of petitioner's income taxes for 1938 and 1939. The Tax Court held (1) that, in his return for 1938, petitioner had understated his income by $81,021.60; (2) that, in his return for 1939, he had understated his income by $71,663.98; and (3) that, in computing his net income for 1939, he had deducted, on account of a loss sustained in that year, $166.66 more than he was entitled to deduct. These holdings are assigned as error.

First. Petitioner, a resident of Oregon, was an employee of Western Cooperage Company, an Oregon corporation, hereafter called Western. Western managed

Hawley Pulp & Paper Company, a Delaware corporation, hereafter called Hawley, under a contract which provided that, as compensation for managing Hawley, Western should receive 174,378 shares of common stock in Hawley. On December 10, 1934, as compensation for services theretofore rendered to Western by petitioner, Western granted petitioner an option to purchase from Western, on or before January 1, 1940, at a price of $7,437.70 (10 cents a share), 74,377 of the 174,378 shares of common stock which Western was to receive from Hawley. Petitioner exercised his option in 1938 by paying Western $7,437.70.

Of the 74,377 shares of Hawley stock so purchased and paid for by petitioner in 1938, 33,759 shares were delivered to him in 1938. These shares, at the time of their delivery to petitioner, had a fair market value of $84,397.50. Thus, at the time of their delivery to petitioner, their fair market value exceeded their cost by $81,021.60. The Tax Court held that the excess ($81,021.60) was compensation for petitioner's services, hence was income to him and should have been so reported in his 1938 income tax return and, since it was not so reported, held that petitioner had understated his income by $81,021.60.

■ We think that, in so holding, the Tax Court erred. Petitioner's Hawley stock was not issued to him as compensation for services,[1] but was purchased by him pursuant to an option.[2] The option was granted him as compensation for services, but the option was not stock or the equivalent of stock. In order to acquire the stock, petitioner had to purchase it, and did purchase it. There was no finding, nor any basis for finding, that the option was intended to enable petitioner to make a "bargain purchase."[3] Instead, the Tax Court found that, at the date of the option, the market value of the stock did not exceed the option price of 10 cents a share. That the parties acted in good faith was not questioned. There was, therefore, no basis for holding that the difference between the option price of the stock and its market value when delivered to petitioner was compensation for his services,[4] or was income to him, or that his income was understated.

■ Holding, as we do, that the difference between the option price of the stock and its market value when delivered to petitioner was not income, we need not consider Article 22(a)-1 of Treasury Regulations 101, promulgated under the Revenue Act of 1938;[5] for that which is not income cannot be made income by Treasury Regulations.[6]

If, upon their delivery to him in 1938, petitioner had sold the 33,759 shares of Hawley stock at their then market value, he would have realized gain therefrom, and that gain would have constituted income; but there was no such sale. Petitioner did not sell or dispose of any of his Hawley stock until 1940.

Second. Of the 74,377 shares of Hawley stock purchased and paid for by petitioner in 1938, 12,374 shares were delivered to him in 1939. These shares, at the time of their delivery to petitioner, had a fair market value of $72,901.38. Thus, at the time of their delivery to petitioner, their fair market value exceeded their cost by $71,663.98. The Tax Court held that the excess ($71,663.98) was compensation for petitioner's services, hence was income to him and should have been so reported in

---

[1] As in Old Colony Trust Co. v. Commissioner, 1 Cir., 59 F.2d 168; Crowell v. Commissioner, 6 Cir., 62 F.2d 51; Olson v. Commissioner, 7 Cir., 67 F.2d 726; Mason v. Commissioner, 6 Cir., 125 F.2d 540.

[2] As in Bothwell v. Commissioner, 10 Cir., 77 F.2d 35; Rossheim v. Commissioner, 3 Cir., 92 F.2d 247; Hawke v. Commissioner, 9 Cir., 109 F.2d 946. See, also, Gardner-Denver Co. v. Commissioner, 7 Cir., 75 F.2d 38; Omaha Nat. Bank v. Commissioner, 8 Cir., 75 F.2d 434.

[3] As in Connolly's Estate v. Commissioner, 6 Cir., 135 F.2d 64, 146 A.L.R. 1387.

[4] See cases cited in footnote 2.

[5] Article 22(a)-1 provides: "If property is transferred to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, regardless of whether the transfer is in the guise of a sale or exchange, such shareholder or employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of (1) compensation for services rendered or to be rendered or (2) a distribution of earnings or profits taxable as a dividend, as the case may be."

[6] Commissioner v. Van Vorst, 9 Cir., 59 F.2d 677; Hawke v. Commissioner, supra.

820

his 1939 income tax return and, since it was not so reported, held that petitioner had understated his income by $71,663.98.

We think that, in so holding, the Tax Court erred. The reasons for this conclusion have been stated already and need not be repeated.

Third. On July 17, 1937, petitioner purchased four units of interest in San Juan Mining Syndicate, hereafter called San Juan, for $1,000. The units became worthless on or about April 25, 1939, and were charged off by petitioner. In computing his net income for 1939, petitioner deducted, on account of the loss resulting from the units becoming worthless, $666.66 (two-thirds of $1,000). He contended before the Tax Court, and contends here, that the loss was an ordinary loss incurred in a transaction entered into for profit, and that therefore he was entitled to deduct the full amount thereof ($1,000).[7] The Tax Court held that San Juan was a corporation; that units of interest in San Juan were shares of stock in a corporation and hence were securities; that the loss resulting from the units becoming worthless should be considered as a loss from a sale or exchange of capital assets on the last day of 1939; and that therefore petitioner was entitled to deduct only 50% ($500) of the loss.[8]

█ █ Petitioner contends that San Juan was not a corporation, but was merely a syndicate, and that therefore the Tax Court's holding was wrong. As used in the Revenue Act of 1938, the term "corporation" includes "associations, joint-stock companies, and insurance companies."[9] A syndicate may be an association and hence a corporation, within the meaning of the Act.[10] Respondent, the Commissioner of Internal Revenue, determined that San Juan was a corporation. No evidence to the contrary was offered by petitioner. Accordingly, and properly, the Tax Court accepted respondent's determination and held that petitioner was entitled to deduct only $500 of the loss resulting from the units becoming worthless. In this we find no error.

Decision reversed and case remanded for further proceedings in conformity with this opinion.

[7] Revenue Act of 1938, § 23(e), 26 U. S.C.A. Int.Rev.Acts, page 1012.

[8] Revenue Act of 1938, §§ 23(g), 117 (a), 117(b), 901(a), 26 U.S.C.A. Int.Rev. Acts, pages 1013, 1061, 1062, 1161.

[9] Revenue Act of 1938, § 901(a) (2), 26 U.S.C.A. Int.Rev.Acts, page 1161.

[10] Helm & Smith, Syndicate v. Commissioner, 9 Cir., 136 F.2d 440.