## COMMISSIONER OF INTERNAL REVENUE *v.* SMITH.

No. 371. Argued January 30, 31, 1945.—Decided February 26, 1945.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr.,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. Clarence D. Phillips,* with whom *Messrs. Franklin T. Griffith* and *Earl S. Nelson* were on the brief, for respondent.

Mr. Chief Justice Stone delivered the opinion of the Court.

Respondent's employer gave to him, as compensation for his services, an option to purchase from the employer certain shares of stock of another corporation at a price not less than the then value of the stock. In two later

tax years, when the market value of the stock was greater than the option price, respondent exercised the option, purchasing large amounts of the stock in each year. The question for decision is whether the difference between the market value and the option price of the stock was compensation for personal services of the employee, taxable as income in the years when he received the stock, under § 22 (a) of the Revenue Act of 1938, c. 289, 52 Stat. 447, and § 22 (a) of the Internal Revenue Code, 26 U. S. C. § 22 (a).

Upon a petition to review the Commissioner's finding of a tax deficiency against respondent for those years, the Tax Court sustained the Commissioner. The Court of Appeals for the Ninth Circuit reversed, 142 F. 2d 818, holding that there was no finding and no evidence to support a finding, that the option was intended to enable respondent to make a "bargain purchase" or that the stock was issued to him as compensation for services. It concluded that the exercise of the option was a mere purchase of a capital investment which could result in taxable income only upon sale of the stock. We granted certiorari, 323 U. S. 696, on a petition which asserted conflict of the decision below with the decision of the Court of Appeals for the Sixth Circuit in *Connolly's Estate* v. *Commissioner,* 135 F. 2d 64.

The Tax Court found that for many years, and at all relevant times, respondent was employed by the Western Cooperage Company. In 1934 Western took over the management of the Hawley Pulp and Paper Co. pursuant to a plan for its reorganization. Hawley was then in financial difficulties, with an indebtedness amounting to $2,790,150. Under its contract with Hawley, Western was to retire annually a certain amount of Hawley's indebtedness. In the event of success in this undertaking, and when the amount of Hawley's indebtedness had been reduced by the sum of $1,400,000, Western was to receive

specified amounts of the Hawley Company's capital stock as compensation for the services thus rendered.

Respondent, in the course of his employment by Western, was active in the reorganization of the Hawley Company. As compensation for his services, the president of Western, in December 1934, gave respondent an oral option to purchase a part of the Hawley stock, to be acquired by Western under its contract. This action was confirmed by resolution of the Board of Directors of Western, pursuant to which Western, as of December 10, 1934, and "in consideration of services rendered" by respondent prior to that date, agreed in writing to sell to respondent at his option, at ten cents a share, a specified proportion of such shares of common stock as it might be entitled to receive under its contract with Hawley. On March 18, 1938, Western became entitled to the stipulated number of shares of the Hawley stock as provided by the contract with Hawley. In that and the following year respondent, by the exercise of his option, acquired from Western large amounts of the stock on payment of the option price.

The Tax Court found that at the date of the option the market price of the stock did not exceed the option price, but that in 1938 the market value of the stock then acquired by respondent exceeded its option price by $81,021, and the value of that acquired in 1939 exceeded the option price by $71,663. The court found from the option itself, the resolution of Western's Board of Directors, and from petitioner's own testimony, that "Western gave the option to petitioner [respondent here] as compensation for services rendered in effecting the reorganization plan of Hawley." It held that the excess of the market value of the shares over the option price in the years when the shares were received by respondent, was compensation for his services, taxable as income in those years.

Since the Tax Court found that the market price of the stock on the date of the option did not exceed the option

price, it is evident that its finding that the option was given as compensation for respondent's services, had reference to the compensation to be derived from exercise of the option after the anticipated advance in market price of the stock. Respondent testified that if the option could have been sold at the time he received it, it would have been for only a "negligible" or "nominal" amount. He has never contended that the option itself had value when given and there was no finding by the Tax Court that it then had value. The Tax Court, in stating the principle which it deemed applicable to the present case, quoted from *Estate of Edward J. Connolly*, 45 B. T. A. 374, as follows: "If the options had never been exercised the optionees would never have received any additional compensation." The option could be exercised only when Western's contract with Hawley had been successfully performed by the reduction of a large part of Hawley's indebtedness, which would result in an increase in the value of Hawley's capital stock to be received by Western subject to respondent's option. Moreover, the Tax Court concluded as a matter of law that the facts which it found, and which we have detailed, brought the case, for the tax year 1938, within the provisions of § 22 (a) of the Revenue Act of 1938, and of the interpretative Treasury Regulations 101, Art. 22 (a)–1; and for the tax year 1939, within the identical provisions of § 22 (a) of the Internal Revenue Code, and Treasury Regulations 103, Art. 19.22 (a)–1.

Section 22 (a) of the Revenue Act defines "gross income" subject to the Act as including "gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid. . . ." Treasury Regulations 101, Art. 22 (a)–1 provides: "If property is transferred . . . by an employer to an employee, for an amount substantially less than its fair market value, regardless of whether the transfer is in

the guise of a sale or exchange, such . . . employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of (1) compensation for services rendered . . ."

Section 22 (a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected. See *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716, 729. The regulation specifically includes in income, property "transferred . . . by an employer to an employee, for an amount substantially less than its fair market value," even though the transfer takes the form of a sale or exchange, to the extent that the employee receives compensation.

In certain aspects an option may be spoken of as "property" in the hands of the option holder. Cf. *Helvering* v. *San Joaquin Fruit Co.*, 297 U. S. 496, 498; *Shuster* v. *Helvering*, 121 F. 2d 643, 645. When the option price is less than the market price of the property for the purchase of which the option is given, it may have present value and may be found to be itself compensation for services rendered. But it is plain that in the circumstances of the present case, the option when given did not operate to transfer any of the shares of stock from the employer to the employee within the meaning of § 22 (a) and Art. 22 (a)–1. Cf. *Palmer* v. *Commissioner*, 302 U. S. 63, 71. And as the option was not found to have any market value when given, it could not itself operate to compensate respondent. It could do so only as it might be the means of securing the transfer of the shares of stock from the employer to the employee at a price less than their market value, or possibly, which we do not decide, as the option might be sold when that disparity in value existed. Hence the compensation for respondent's services, which the parties contemplated, plainly was not confined to the mere

delivery to respondent of an option of no present value, but included the compensation obtainable by the exercise of the option given for that purpose. It of course does not follow that in other circumstances not here present the option itself, rather than the proceeds of its exercise, could not be found to be the only intended compensation.

The Tax Court thus found that the option was given to respondent as compensation for services, and implicitly that the compensation referred to was the excess in value of the shares of stock over the option price whenever the option was exercised. From these facts it concluded that the compensation was taxable as such by the provisions of the applicable Revenue Acts and regulations. We find no basis for disturbing its findings, and we conclude it correctly applied the law to the facts found. Its decision is affirmed, and the judgment of the Court of Appeals below, reversing it, is

*Reversed.*

MR. JUSTICE ROBERTS is of the opinion that the judgment should be affirmed for the reasons stated by the Circuit Court of Appeals, 142 F. 2d 818.