WANDA V. VAN DUSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. A. VAN DUSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5210, 5211.    Promulgated February 24, 1947.

*Raymond M. Wansley, C. P. A.,* and *John M. Cranston, Esq.,* for the petitioners.

*E. A. Tonjes, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge*: The question here posed is whether petitioner received income under the scope of section 22 (a), Internal Revenue Code, when, pursuant to the option contract set out in the facts, he purchased stock of Consolidated from Fleet, its president.

The definition of income contained in section 22 (a) is extremely broad. In fact, it would be difficult to contrive a definition broader in scope or more all-embracing in concept. Income may be in the form of cash or of property.

The Commissioner has promulgated Regulations 103, section 19.22 (a)–1 in interpretation of section 22 (a) of the code. In any case where the requirements laid down by the regulations are satisfied, it may properly be said that income is earned. But our question is not limited to determining whether the excess value was income under the

regulations. Section 22 (a) of the Internal Revenue Code is the touchstone by which income is gauged. Of section 22 (a), the Supreme Court, speaking through the Chief Justice, in *Commissioner* v. *Smith*, 324 U. S. 177, said: "Section 22 (a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, *whatever the form or mode by which it is effected.*" (Emphasis supplied.)

Our concern centers first on the facts giving rise to the option agreement which was entered into December 7, 1934, at the same time petitioner was employed to work for Consolidated. The testimony of Fleet as to the employment and the nature of the option is illuminative of his attitude toward the same. The following are excerpts:

Q Do you recall the salary that was to be paid?
A I think it was $10,000.00 a year. That is '34. Let's see. I think it was $10,000.00 a year and he to take down 50 shares of my stock a month for $5.00 a share for the next ten years, or for ten years immediately following, conditioned upon his remaining in the employ of Consolidated Aircraft Corporation.

\* \* \* \* \* \* \*
Q Do you recall whether or not the matter of giving Mr. Van Dusen this option to purchase was made a part of the original proposition to him?
A I think it was.

\* \* \* \* \* \* \*
Q You also felt, did you not, Mr. Fleet, that the option which you gave Mr. Van Dusen would be regarded as something of an additional inducement to enter the employ of Consolidated?
A I think so.

\* \* \* \* \* \* \*
Q But the motivating influence on your part of giving this privilege was to have Mr. Van Dusen work for Consolidated, wasn't it?
A That's right.

Fixing our attention on the option agreement itself, it will be noted that in the opening paragraph the parties recognized in so many words the intimate relation of the option to petitioner's employment. The language used: "In connection with your employment this day by our company, it gives me much pleasure to confirm my offer to sell you fifty (50) shares of my personal common stock" and "this right to hold, however, only so long as you are retained in the company's employ," all speaks in terms of inducement or consideration for the employment of petitioner.

Fleet was president of Consolidated and a large holder of its stock. As such, he was personally and financially interested in the success and growth of the company. Petitioner was able to obtain the stock only by engaging in the employment and only so long as he remained in the employ of the company, i. e., only by performing his duties and rendering services to the company. If his employment ceased the opportunity to buy the stock also ceased. Thus it is there was a vital

causal connection between petitioner's employment and his rendition of services and the purchase of the stock at favorable prices. If Fleet had agreed to pay petitioner $100 per month so long as he remained in the employ of Consolidated, there would scarcely be any basis to question the fact that such payment would have been income to petitioner. Likewise if, under otherwise similar facts, Fleet had transferred the shares each month without any payment so long as petitioner remained an employee of Consolidated, of a certainty, petitioner would have received income measured by the value of the shares.

We must look at the case from the position of the petitioner. Bearing in mind the observation of the Supreme Court in *Commissioner* v. *Smith, supra*, did he receive any economic or financial benefit from the exercise of the option? Was the benefit connected with, or conditioned on, rendering services and thus connected with his employment? Was the benefit a gift by Fleet? The answers seem to be obvious. Petitioner clearly benefited by exercising the option and securing the stock at less than market prices. The benefit was directly connected with, and conditioned on, the rendition of services and thus depended on his employment. The benefit was not a gift by Fleet—it was based on the consideration of petitioner entering and continuing in the employ of Consolidated. Clearly the "economic or financial benefit" gained by petitioner from the exercise of the option falls within the broad scope of the language of section 22 (a), Internal Revenue Code, as elucidated by the Supreme Court.

Whether petitioner was serving two masters or whether Fleet was acting solely for himself or as a representative of the company in the negotiations which led to the giving of the option contract, we need not decide. The facts bring the gain within the expansive scope of section 22 (a). Each case turns on its facts. Close analysis of the facts in the decided cases, together with their chronology with reference to *Commissioner* v. *Smith, supra*, will serve to distinguish or render obsolete as authority the cases relied on by petitioner.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*