OPINION. Rice, Judge: The issue herein is one of fact, Phüip J. LoBue, 22 T. O. 440, on appeal (C. A. 3, Oct. 8,1954); namely, whether the stock option granted to petitioner was intended to compensate him or to enable him to acquire a proprietary interest in his new employer. Respondent has determined that the excess of the market price over the option price on the date of exercise was intended as compensation for petitioner and, consequently, is taxable as ordinary income. Commissioner v. Smith, 324 U. S. 177 (1945), rehearing denied 324 U. S. 695 (1945). Petitioner contends that the option was meant solely to enable him to acquire a proprietary interest in the corporation and that he derived no taxable income upon exercising it. The determination of such intent is a question of fact and dependent upon the precise facts of the case at hand. “Each case must be decided upon its own peculiar facts, and facts which have been deemed significant under some circumstances may serve as guides, but are not necessarily controlling.” Abraham Rosenberg, 20 T. C. 5 (1953). In the instant case, as in so many cases of this nature, “both elements are present and decision is impossible if the absence of one or the other is essential thereto.” Delbert B. Geeseman, 38 B. T. A. 258 (1938). After careful consideration of the entire record in the instant case, with particular attention to the various negotiations which culminated in the option agreement and employment contract granted to petitioner, to the correspondence between petitioner and the then president of the company, and to the various statements issued by the company regarding petitioner’s employment and the stock option granted to him, we have concluded that the option price was determined with the intent that it compensate petitioner. We recognize that there may have been a fixed intent that petitioner acquire and hold his stock as a permanent investment in the corporation. Nevertheless, we think it clear that the option price was established with the intent that he acquire such stock at a price substantially lower than its market price as a reward for services to be rendered. Petitioner and his prospective employer had agreed at the very start of their negotiations on what his base salary would be for the first 3 years; yet, a final agreement was not reached until over a year later. Understandably, petitioner wanted something in addition to this base salary in order to offset the forfeiture of substantially all of the $53,500 in deferred compensation credited to him at Schenley and a reduction in salary at the rate of $20,000 and $10,000 during his first and second years of employment at Household, respectively. Since petitioner was informed at the very first meeting with Henderson that it was Household’s policy that its executives acquire a stock interest in the company, the granting of a stock option, alone, could not have been the factor which was the subject of these prolonged negotiations. We are convinced that the decisive element was the bargain nature of the stock option and that it was the assurance that there would be a substantial spread between the option price and the market price which persuaded petitioner to accept his job with Household. Although the option price was not fixed at the time of employment, petitioner knew that it would be substantially below the market price. When it was subsequently fixed at $18.70, it appears probable, from the limited evidence before us, that the market price was somewhere between $30 and $33.75. When exercised, the market value was $33.75, providing a total spread of $150,500 on the 10,000 shares purchased. We recognize that petitioner wanted to acquire a proprietary interest and build up an “estate” for his family. This aim was satisfied by the very generous credit terms on which Household permitted him to purchase his stock. It appears clear, however, that the price of the stock was determined to satisfy certain compensatory aspects of the negotiations. The bargain nature of the option was the factor which compensated petitioner for the financial sacrifice involved in leaving Schenley. This was the “inducement” which petitioner sought; and, as the term is used in the instant case, we are satisfied that it required the performance of an act by petitioner which constituted the consideration for the option. Cf. Abraham Rosenberg, supra. This act was the acceptance of the position at Household, and upon so doing the option immediately became effective. It was thereafter exercisable regardless of whether petitioner remained at Household for any substantial length of time. The option thus conferred a benefit which was contingent on accepting employment, Wanda V. Van Dusen, 8 T. C. 388 (1947), affd. 166 F. 2d 647 (C. A. 9, 1948); cf. Charles E. Sorensen, 22 T. C. 321; and this benefit must be considered as compensation. Although the record indicates that the option price was equivalent to the book value of the stock, this does not detract from our conclusion that the spread between the option price and the market value was granted to petitioner as compensation for joining the company. The 10,000 shares of treasury stock sold to petitioner had a value on the market $150,500 in excess of the price which he paid, and this economic benefit was clearly conferred upon him with compensatory intent. Nor is the failure of Household to take a deduction of this $150,500 as compensation determinative, cf. Estate of Lauson Stone, 19 T. C. 872 (1953), affd. 210 F. 2d 33 (C. A. 3, 1954); Abraham Rosenberg, supra; Delbert B. Geeseman, supra, since the corporation may have desired to aid petitioner in his attempt to secure favorable tax treatment for his option. Moreover, the corporation has filed protective refund claims in which it claimed the deduction, thus making certain that the deduction will not be lost if the transaction is now found to be compensatory. Petitioner contends, in the alternative, that even if the gain arising out of the exercise of the option is found to be compensatory, the shares of stock had no value in his hands during the year in issue; and, consequently, the amount of compensation is not determinable. Petitioner relies upon two theories, neither of which we find to be meritorious. First, he argues that he could not sell his stock while he was employed by Household; and this, consequently, precludes a determination that it had a market value during this period. However, no formal contract was ever entered into binding petitioner regarding the sale of his stock. From the viewpoint most favorable to petitioner, it would appear that there was an oral agreement, in extremely general terms, that he would not sell his shares unless compelled to by some emergency. This vague agreement could not effectively bind petitioner and prevent the sale of his shares. There was testimony that, in the past, various officers had sold stock in the company although subject to the same sort of oral “understanding.” Moreover, had he wished to resign, the nature and purpose of the agreement would have permitted the immediate sale of his stock since such resignation would eliminate the need for his acquisition and retention of a proprietary interest in the company. Petitioner also contends that restrictions contained in section 16 (b) of the Securities and Exchange Act of 1934 effectively prevented him from selling his stock within 6 months of the date of acquisition. Since such 6-month period would expire after the end of the taxable year before us, he argues that his stock had no ascertainable market value (under this theory) until 1950, a year which is not before us. Section 16 (b) is intended to eliminate “insiders” profits on transactions by the officers of a corporation in the stock of that corporation. It provides that any profit realized by an officer of a corporation arising out of the purchase and sale of the corporation’s stock within a 6-month period shall be recoverable by the corporation. A situation similar to the instant one arose in Truncale v. Blumberg, 88 F. Supp. 677 (S. D., N. Y., 1950), affirmed per curiam 182 F. 2d 1021 (C. A. 2, 1950), wherein a corporation had granted stock warrants to various individuals to induce them to enter its employ in executive capacities. These warrants were sold within 6 months of their receipt. In a suit to determine the value of such warrants and the amount recoverable by the corporation under section 16 (b), it was held that these warrants constituted compensation to the employees to the extent of their market value at the time of issue. No amount was held to be recoverable by the corporation since the warrants had been sold for less than the market value on the date they were issued. Similarly, in the instant case, petitioner could have sold the stock acquired pursuant to his option at any price up to $33.75 (its fair market value on the date of acquisition) without incurring any liability under section 16 (b). Consequently, this section of the Securities and Exchange Act of 1934 did not constitute a restraint on the sale of the stock at that price by petitioner during the year here involved. We, therefore, hold that the 10,000 shares of stock, when acquired by petitioner, had an ascertainable market value of $33.75 each, and that he is taxable on the excess of that amount over the amount paid. Decision will be entered v/nder Bule 50.