WILLIAM S. THORNHILL AND MARGARET M. THORNHILL, PETITIONERS,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
MAARTEN W. J. OUDEGEEST AND CAROL T. OUDEGEEST, PETITIONERS,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86350, 86351.    Filed February 27, 1962.

*Irwin L. Tappen, Esq.*, for the petitioners.
*Douglas D. Robertson, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined deficiencies in income taxes of petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 86350 | William S. Thornhill and Margaret M. Thornhill | 1956 | $7,606.55 |
| 86351 | Maarten W. J. Oudegeest and Carol T. Oudegeest | 1956 | 7,951.05 |

The sole issue presented is whether or not the exercise of stock options by petitioners in 1956 to purchase stock of U.S. Polymeric Chemicals, Inc., gave rise to taxable income to petitioners to the extent of the difference between the fair market value of the stock and the option price thereof at the time the options were exercised.

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

Petitioner William S. Thornhill has been a resident at all times material hereto of Riverside, Connecticut. He and his wife, Margaret M. Thornhill, filed their joint income tax return for the taxable year 1956 with the district director of internal revenue, Lower Manhattan District, New York, New York.

Petitioner Maarten W. J. Oudegeest has been a resident at all times material hereto of Riverside, Connecticut. He and his wife, Carol T. Oudegeest, filed their joint return for the taxable year 1956 with the district director for the district of Connecticut.

The significant facts relate to the husbands, who are herein sometimes referred to as petitioners.

In 1950 petitioners and a third party, A. J. Fisher, Jr. (sometimes herein referred to as the promoters), entered into negotiations with

the investment banking firm of Dominick & Dominick for the raising of capital to organize and operate a corporate manufacturing enterprise. Being impressed with the talents of the promoters and the merits of their proposed enterprise, Dominick & Dominick took the proposition up with a limited group of investors with a view to a financing program.

While Dominick & Dominick judged the promoters to be skilled chemists and salesmen, the latter appeared too untested as a management team to warrant placing in their hands immediate control of the projected business. Hence, the plan of organization worked out among the parties in interest contemplated that initial common stock voting control remain for the time being in the hands of the investors with Dominick & Dominick as their representatives, but that the promoters would have the opportunity of assuming voting control of the business after they had succeeded in building a going concern with sufficient substance to pay off the initial investment which was to be furnished by the investors in the form of subscriptions to preferred stock.

As a result of these negotiations, the promoters entered into a written agreement dated October 3, 1950, with a group of investors and Dominick & Dominick representing the investors, entitled "U.S. Polymeric Chemicals, Inc., Memorandum of Corporate Structure and Financing" (sometimes referred to as the "October 3, 1950, Subscription Agreement").

The October 3, 1950, subscription agreement provided that Fisher, Oudegeest, and Thornhill would be the corporation's initial executive officers and that they would enter into employment contracts with the corporation for a period of 5 years. The first meeting of the board of directors of U.S. Polymeric Chemicals, Inc., held on October 16, 1950, elected A. J. Fisher, Jr., M. W. J. Oudegeest, and W. S. Thornhill as officers and approved a 5-year employment contract dated October 17, 1950, which provided for a minimum yearly salary for each of $9,500. The minimum salary was subject to change.

In accordance with the provisions of the October 3, 1950, subscription agreement, the investors pledged $100,000 of capital represented by their subscriptions to 1,000 shares of no-par-$6 preferred stock (nonvoting) at $99.26½ per share and 1,470 shares of 50-cent-par-value common stock (voting) at its stated par value of 50 cents per share. The promoters were allotted and subscribed for collectively 1,380 shares of common stock, or 460 shares each, and Dominick & Dominick were allotted 150 shares of common stock for their services. Out of the total 3,000 shares of common stock to be initially issued,

the investor group were to acquire 49 percent of voting control, the promoters 46 percent thereof, and Dominick & Dominick 5 percent thereof, thus lodging in the latter the balance of voting power as between the promoters and the investor group.

To carry out the plan whereby the promoters were to have an opportunity to acquire voting control, each of the promoters was to have an option to purchase 100 additional shares of common stock (or a total of 300 shares) at the same price upon retirement of all of the preferred stock.

The certificate of incorporation of the new enterprise under the name of U.S. Polymeric Chemicals, Inc., a Delaware corporation (the company), embodied the capital structure contemplated in the October 3, 1950, subscription agreement, and specified the option rights of the three promoters, together with provisions protecting them against dilution of their potential voting rights in case the company should issue shares of its common stock in excess of the initial issue of 3,000 shares. Such common stock provisions were as follows:

3. Three hundred (300) shares of unissued Common Stock shall be set aside and held in reserve for issuance under an option agreement to be given by the Corporation to A. J. Fisher, Jr., M. Oudegeest and W. S. Thornhill for the purchase by each of them at par of one hundred (100) shares within one year after the retirement of all issued and outstanding shares of $6 Preferred Stock, *provided that*, if, prior to the exercise of such option, Common Stock shall be issued in excess of 3,000 shares, then in addition to the said 300 shares so set aside under option, there shall be set aside and reserved under such option, shares of Common Stock at the rate of one share for each ten shares of Common Stock of the Corporation issued in excess of 3,000 shares, but the purchase price of such additional optioned shares, if any, shall be the same per share as the issuing price per share of the shares of Common Stock issued in excess of 3,000 shares by which such additional optioned shares shall be respectively measured as aforesaid.

4. Holders of Common Stock shall have the pre-emptive right to subscribe for any issue of shares of Capital Stock of the Corporation of any class in excess of 1,000 shares of $6 Preferred Stock and 3,000 shares of Common Stock plus such number of shares of Common Stock as shall have been set aside and held in reserve under the aforementioned option agreement, and no such pre-emptive right shall apply to the issue of said 1,000 shares of $6 Preferred Stock and said 3,000 shares of Common Stock plus said number of shares of Common Stock so reserved under option.

At the first organizational meeting of the company's board of directors on October 16, 1950, the details of the October 3, 1950, subscription agreement were carried out, including authorization of the company to enter into a stock option agreement with the promoters, which as executed was in the following terms:

U.S. POLYMERIC CHEMICALS, INC.

*New York, N.Y.*
*October 16, 1950*

Mr. Arthur J. Fisher, Jr.
West Road
New Canaan, Conn.

Mr. Maarten W. J. Oudegeest
60–01 D—194th Street
Flushing, N.Y.

Mr. W. S. Thornhill
Warwick Road
Colonia, N.J.

Dear Sirs:

Reference is made to the pre-organization memorandum subscription agreement dated October 3, 1950 (a copy of which is on file in this corporation's minute book, as identified by the incorporators at their first meeting held previously today) pursuant to which the undersigned corporation was organized, and to the provisions set forth in this corporation's Certificate of Incorporation relating to an option to be granted by this corporation to each of you to purchase, at par, 100 shares of the corporation's Common Stock (or a total of 300 shares) within one year after all of the $6 Preferred Stock of this corporation shall have been retired.

It is the mutual understanding between you and this corporation that such option is to afford you an opportunity to acquire in the aggregate a sufficient number of shares of Common Stock which together with your combined holdings of Common Stock, as contemplated in said pre-organization memorandum subscription agreement, will amount to a majority of such Common Stock and voting control of the corporation, after the retirement of all of the said $6 Preferred Stock.

In consideration of the terms of said pre-organization memorandum subscription agreement and the sum of one dollar paid by each of you, receipt of which is hereby acknowledged, the undersigned corporation hereby grants to each of you an option to purchase 100 shares of this corporation's Common Stock at the price of fifty cents per share, which option, however, may be exercised only after the retirement of all outstanding shares of this corporation's $6 Preferred Stock, and within one year of such complete retirement of said $6 Preferred Stock; *provided, however,* that, so long as any of the corporation's $6 Preferred Stock shall remain outstanding, such option shall terminate in respect of any one or more of you who shall cease to be employed by this corporation if and when such employment ceases, in which event, the shares theretofore held under option for such one or more of you who shall cease to be employed shall be available for purchase under option by such one or more of you as shall remain in the Company's employ, pro rata, under the same terms and conditions herein set forth.

In order to protect the shares under option from dilution of their potential relative voting rights, it is further agreed that if, prior to the exercise of such option, Common Stock of this corporation shall be issued in excess of 3,000 shares, then in addition to the said 300 shares set aside under option, there shall be set aside and reserved under such option, shares of Common Stock at the rate of one share for each ten shares of Common Stock of this corporation issued in excess of 3,000 shares, but the purchase price of such additional optioned shares, if any, shall be the same per share as the issuing price per share

of the shares of Common Stock issued in excess of 3,000 shares by which the number of such additional optioned shares shall be measured; and each of you shall have pro rata right to purchase such additional optioned shares on the terms aforesaid.

You and each of you represent to this corporation that any shares you acquire hereunder will be acquired for investment and not for resale.

So long as any of said $6 Preferred Stock shall remain outstanding, the option rights hereunder shall not be assignable except among yourselves.

This letter is to be executed in four counterparts (each counterpart being deemed an original) one of which counterparts is to be delivered to each of you and the fourth counterpart is to be retained by this corporation and lodged among its corporate records.

Very truly yours,

U.S. POLYMERIC CHEMICALS, INC.
By W. S. Thornhill
*President*

Attest:
Arthur J. Fisher, Jr.
*Secretary*

On October 17, 1950, all subscriptions to company's capital stock were paid in full and stock certificates were issued to the following persons in the amounts listed:

| Subscriber | Number of shares, $6 preferred | Amount paid | Number of shares, common | Amount paid |
|---|---|---|---|---|
| W. S. Thornhill | | | 460 | $230.00 |
| Arthur J. Fisher | | | 460 | 230.00 |
| M. W. J. Oudegeest | | | 460 | 230.00 |
| Pallas Corp | 500 | $49,632.50 | 735 | 367.50 |
| Dominick & Dominick | 500 | 49,632.50 | 735 | 367.50 |
| Dominick & Dominick | | | [1] 150 | [2] 75.00 |

[1] Issued for services rendered.
[2] Stated value of services.

Effective January 31, 1955, Arthur J. Fisher, Jr., one of the three promoters, resigned as an officer and director of the company. On January 25, 1955, he sold his 460 shares of common stock to the company. As specified in the foregoing October 16, 1950, option agreement, Fisher's option rights on 100 shares of common stock became vested in Thornhill and Oudegeest so that each of the latter then held options on 150 shares instead of 100 shares.

In the latter part of 1955, due to business growth, the company needed additional capital of approximately $100,000. Of this amount, the board of directors, at its December 19, 1955, meeting, determined to raise $50,000 through a term bank loan and the balance through the sale of 500 additional shares of $6 preferred stock at $100 per share, accompanied by rights to the purchasers thereof to buy 3 additional shares of common stock at $20 per share for each 5 shares of preferred stock so purchased.

The contemplated sale of 300 additional shares of common stock at $20 per share automatically brought into operation the antidilution provisions of the company's charter and the stock option agreement, so that the 300 shares of common stock then under option to Thornhill and Oudegeest were increased by 10 percent or 30 shares, but at a price of $20 per share for the additional 30 shares.

A feature of the situation which commanded the attention of the board at its December 19, 1955, meeting was that the use of preferred stock as a continuing vehicle for the company's capital expansion by the issuance from time to time of additional shares of such stock would unfairly prejudice the optionees by postponing indefinitely their rights of exercise, out of context with the intent that these rights should accrue upon the retirement of initial 1,000 shares of preferred stock issued in 1950.

By December 19, 1955, over 28 percent of the original 1,000 shares had already been retired.

In consequence, the board authorized a modification of the option agreement to the extent of permitting the exercise thereof in equal annual installments over a 3-year period commencing in 1956, as follows:

U.S. POLYMERIC CHEMICALS, INC.
Stamford, Conn.

*December 20, 1955*

Mr. Maarten W. J. Oudegeest
6 Meadow Lane
Old Greenwich, Conn.

Mr. W. S. Thornhill
109 Hendrie Avenue
Riverside, Conn.

Dear Sirs:

Reference is made to the terms of a certain option agreement under this Company's letter dated October 16, 1950, addressed to each of you and to Arthur J. Fisher, Jr., duly accepted by you and him, whereby you and the said Mr. Fisher were granted an option to purchase in the aggregate, 300 shares of this Company's Common Stock at 50 cents per share, pro rata, after the retirement of all of the Company's $6 Preferred Stock, plus 1 additional share for each 10 shares of Common Stock issued by the Company in excess of 3,000 shares prior to the exercise of the option.

Mr. Fisher having withdrawn from the Company, it is recognized that the shares formerly available to him under said option are now available to each of you pro rata.

In view of the Company's expansion plans and need for more capital through the proposed issue and sale of 500 additional shares of $6 Preferred Stock and 300 additional shares of Common Stock, the consequent changed outlook for the early retirement of all of the $6 Preferred Stock, and in consideration of the foregoing and the lower percentage of voting rights in the Company that your present stock holdings, plus shares under option, will represent after

the new financing presently contemplated, the Company agrees to modify the terms of said October 16, 1950, option agreement so as to provide as follows:

Each of you shall have an option to purchase 150 shares of this Company's Common Stock at the price of 50 cents per share, plus 15 additional shares of Common Stock at $20 per share (such additional shares under option aggregating 30 shares, equal to 10% of the 300 additional shares presently to be issued at $20 per share in connection with the new financing). Said option shall be exercisable in three equal installments by each of you as follows: Between January 1 and April 1 in each of the years 1956, 1957, and 1958, each of you shall have the right to purchase 50 shares of Common Stock at 50 cents per share and 5 shares of Common Stock at $20 per share.

The Company will reserve and hold available for issuance on the exercise of the foregoing option rights, 330 shares of Common Stock.

In order to protect the shares under option from dilution of their potential relative voting rights, it is further agreed that if, prior to the expiration of the foregoing option rights, Common Stock of this Company shall have been issued in excess of 3,630 shares then, in addition to the 330 shares set aside under option, there shall be set aside and reserved under such option 1 share for each 10 shares of Common Stock of this Company issued in excess of 3,630 shares, but the purchase price of such additional optioned shares, if any, shall be the same per share as the issuing price per share of the shares of Common Stock issued in excess of 3,630 shares; and each of you shall have pro rata rights to purchase such additional optioned shares on the terms aforesaid for a period of 90 days following any such issuance of shares of Common Stock in excess of 3,630 shares.

The option rights hereunder shall terminate in respect of either of you who shall cease to be employed by the Company if and when such employment ceases, in which event the shares theretofore held under option for such one of you who shall cease to be employed shall be available for purchase under option by the other of you as shall remain in the Company's employ, under the same terms and conditions herein set forth.

The option rights hereunder shall not be assignable except between yourselves.

This letter is to be executed in three or more counterparts (each counterpart being deemed an original) one of which counterparts is to be delivered to each of you and a third counterpart is to be retained by this Company and lodged among its corporate records.

If the foregoing meets with your approval, will you kindly indicate your respective acceptances thereof in the spaces marked below for that purpose, whereupon this letter and your acceptances will constitute a valid and binding agreement between this Company and yourselves.

Very truly yours,

U.S. POLYMERIC CHEMICALS, INC.
By M. Oudegeest
*President*

Attest:
*Secretary*
W. S. Thornhill
Accepted this 20th day of December, 1955

Maarten W. J. Oudegeest
MAARTEN W. J. OUDEGEEST
W. S. Thornhill
W. S. THORNHILL

The company sold said 500 additional shares of preferred and 300 additional shares of common stock as follows:

| Purchaser | Number of shares | Date of issue | Consideration |
|---|---|---|---|
| | *$6 preferred* | | |
| Pallas Corp | 250 | Jan. 31, 1956 | $25,000 |
| Dominick & Dominick | 250 | Jan. 31, 1956 | 25,000 |
| Total | 500 | | 50,000 |
| | *Common* | | |
| Pallas Corp | 150 | July 13, 1956 | 3,000 |
| Gunther & Co | 6 | Feb. 9, 1956 | 120 |
| Dominick & Dominick | 75 | Feb. 9, 1956 | 1,500 |
| Dominick & Dominick | 30 | Feb. 16, 1956 | 600 |
| Dominick & Dominick | 30 | Feb. 24, 1956 | 600 |
| Dominick & Dominick | 9 | July 18, 1956 | 180 |
| Total | 300 | | 6,000 |

Oudegeest on February 28, 1956, and Thornhill on March 1, 1956, each exercised his first option installment by taking up 50 shares of common stock at 50 cents per share and 5 shares of common stock at $20 per share.

In July of 1956, due to further rapid business growth, the company's board of directors found additional financing imminent. The company's capital structure indicated that instead of further senior securities and debt, common stock should be used as the financing medium.

The company's new financing program was acted upon by the board of directors at its July 17, 1956, meeting. The board made plans to split the common stock on a 20–1 basis and thereafter to raise approximately $100,000 of new capital by a public sale of 16,725 additional shares of common stock at $6 per share. However, the continuing right of the taxpayers under the existing option agreement to purchase additional shares of common stock at the rate of 10 percent of any new issues by the company was, in the board's opinion, a burden on future financing such as to make it important that the taxpayers' right be terminated.

As authorized on behalf of the company at the July 17, 1956, board meeting, a further agreement between the company and the taxpayers was entered into as follows:

U.S. POLYMERIC CHEMICALS, INC.
Stamford, Connecticut

*July 17, 1956*

Mr. Maarten W. J. Oudegeest
6 Meadow Lane
Old Greenwich, Conn.

Mr. W. S. Thornhill
109 Hendrie Avenue
Riverside, Conn.

Dear Sirs:

Reference is made to the terms of a certain option agreement under this Company's letter dated October 16, 1950, addressed to each of you and to Arthur J. Fisher, Jr., duly accepted by you and him, whereby each of you were granted certain option rights to purchase shares of Common Stock of this Company, as modified by a letter agreement dated December 20, 1955, between this Company and each of you. Under said option agreement as so modified, each of you had the right to purchase 150 shares of this Company's Common Stock at the rate of 50 cents per share, plus 15 additional shares of Common Stock at $20 per share, exercisable in three equal installments between January 1 and April 1 in each of the years 1956, 1957 and 1958.

The first installment having been exercised, there remain under option to each of you, 100 shares at 50 cents per share and 10 shares at $20 per share.

Said option agreement as modified further provides, that if prior to the expiration of the foregoing option rights Common Stock of this Company shall have been issued in excess of 3,630 shares then, in addition to the 330 shares set aside under option, there shall be set aside and reserved under such option one share for each 10 shares of Common Stock of this Company issued in excess of 3,630 shares, at the same price per share as the issuing price per share of the shares of Common Stock issued in excess of 3,630 shares, as more fully set forth in the said December 20, 1955 modification agreement. A provision in the Company's existing charter limits the pre-emptive right of Common Stockholders generally to permit the reservation and sale under option to you up to 10% of the shares of Common Stock issued in excess of 3,630 shares.

In view of the Company's present plans to split its Common Stock on a 20–1 basis and to issue and sell additional shares of Common Stock to meet the Company's expanding financial needs, our Board of Directors deems it no longer convenient or desirable from the Company's standpoint to maintain the existing option arrangements with you, including the charter limitation on the pre-emptive right of Common Stockholders.

Consequently, in consideration of the mutual agreements herein contained, we make the following offer subject to acceptance by both of you:

(a) each of you will have the right to purchase on or before July 30, 1956, 100 shares of Common Stock at 50 cents per share and 10 shares of Common Stock at $20 per share; and

(b) from and after July 30, 1956, all of the provisions of said October 16, 1950 option agreement as modified by said December 20, 1955 agreement, and all rights thereunder, shall cease and determine.

If the foregoing meets with your approval, will you kindly indicate your respective acceptances thereof in the spaces marked below for that purpose,

whereupon this letter and your acceptances will constitute a valid and binding agreement between this Company and yourselves.

U.S. POLYMERIC CHEMICALS, INC.

By M. Oudegeest

*President*

Attest:

W. S. Thornhill

*Secretary*

ACCEPTED THIS 17 DAY OF JULY, 1956.

Maarten W. J. Oudegeest

MAARTEN W. J. OUDEGEEST

W. S. Thornhill

W. S. THORNHILL

Pursuant to the foregoing July 17, 1956, agreement, Oudegeest on July 25, 1956, and Thornhill on July 27, 1956, each purchased 100 shares of common stock at 50 cents per share and 10 shares of common stock at $20 per share.

Effective August 1, 1956, the company's common stock was split 20 for 1 and thereafter the company sold 16,725 additional shares of its common stock at $6 per share. It has been stipulated that the fair market value of the unsplit shares, i.e., those purchased by the taxpayers upon the exercise of their options, was $120 per share at the dates taxpayers exercised their respective options.

The stock options here involved were nontransferable except among the promoters and were contingent upon continued employment.

From the inception of U.S. Polymeric Chemicals, Inc., in October 1950 until January 31, 1955, W. S. Thornhill, M. W. J. Oudegeest, and A. J. Fisher, Jr., served as its executive officers and as directors.

Subsequent to January 31, 1955, and during the time material hereto, W. S. Thornhill served U.S. Polymeric Chemicals, Inc., as vice president and secretary and as a director. M. W. J. Oudegeest served as president and treasurer and also as a director.

Petitioners and Fisher (the latter up to the time of his resignation) were given complete responsibility and authority over the operating features of U.S. Polymeric Chemicals, Inc.

### OPINION.

The significant facts are set forth in detail in our findings and need not be repeated.

Petitioners take the position that the stock options were granted to them to give them the opportunity (once the preferred stock was redeemed) to increase their proprietary interest and to gain control of the corporation. They argue that this resulted from an arm's-length agreement with the investors under which there would be a test period (up to the time of redemption of the preferred stock) during which

they would have the chance to demonstrate that they could develop and successfully carry on the business. From this, they draw the inference that the benefits derived by them from the exercise of the stock options were not compensatory, and they argue as a matter of law that such benefits did not give rise to taxable income.

Respondent takes the position, in effect, that the benefits were compensatory; that they were clearly connected with petitioners' employment; that in reality they were an incentive to petitioners (and Fisher up to the time of his resignation) who were in charge of operating the business to build up as successful a business as they could, and that this view should be contrasted with the position of the investors who took no part in operating the business and by the same token received no like stock options (although they had certain preemptive rights). Respondent also points to the fact that the promoters could not dispose of their options except among themselves, and that their option rights could be exercised only while they remained in the employ of the corporation.

Under the circumstances, we do not think an extended discussion is necessary to demonstrate that the benefits derived by petitioners from the exercise of their option rights were compensatory and are to be treated as taxable income under section 61(a) of the Code of 1954 to the extent of the difference between the fair market value of the stock and the option price at the time the options were exercised. Nevertheless, since all of petitioners' contentions are so fully considered, in principle, in *Commissioner* v. *LoBue*, 351 U.S. 243 (1956), we quote at some length from the Supreme Court's opinion as follows (p. 247):

Since the employer's transfer of stock to its employee LoBue for much less than the stock's value was not a gift, it seems impossible to say that it was not compensation. The Tax Court held there was no taxable income, however, on the ground that one purpose of the employer was to confer a "proprietary interest." But there is not a word in § 22(a) which indicates that its broad coverage should be narrowed because of an employer's intention to enlist more efficient service from his employees by making them part proprietors of his business. In our view there is no statutory basis for the test established by the courts below. When assets are transferred by an employer to an employee to secure better services they are plainly compensation. It makes no difference that the compensation is paid in stock rather than in money. Section 22(a) taxes income derived from compensation "in whatever form paid." And in another stock option case we said that § 22(a) "is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S. Ct. 591, 593, 89 L. Ed. 830. LoBue received a very substantial economic and financial benefit from his employer prompted by the employer's desire to get better work from him. This is "compensation for personal service" within the meaning of § 22(a).

LoBue nonetheless argues that we should treat this transaction as a mere purchase of a proprietary interest on which no taxable gain was "realized" in the year of purchase. It is true that our taxing system has ordinarily treated an arm's length purchase of property even at a bargain price as giving rise to no taxable gain in the year of purchase. See Palmer v. Commissioner of Internal Revenue, 302 U.S. 63, 69, 58 S. Ct. 67, 69, 82 L. Ed. 50. But that is not to say that when a transfer which is in reality compensation is given the form of a purchase the Government cannot tax the gain under § 22(a). The transaction here was unlike a mere purchase. It was not an arm's length transaction between strangers. Instead it was an arrangement by which an employer transferred valuable property to his employees in recognition of their services. We hold that LoBue realized taxable gain when he purchased the stock.

In the light of the foregoing, we sustain respondent's determination.

*Decisions will be entered for the respondent.*