PHILIP H. and CHERIE M. STEPHENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stephens v. Commissioner
Docket No. 9060-73.
United States Tax Court
T.C. Memo 1976-13; 1976 Tax Ct. Memo LEXIS 388; 35 T.C.M. (CCH) 39; T.C.M. (RIA) 760013; January 20, 1976, Filed Philip H. Stephens, pro se. Robert T. Hollohan, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The Commissioner determined deficiencies in the Federal income tax of Philip H. and Cherie M. Stephens in the amounts of $1,499.92 and $1,143.54 for the years 1970 and 1971, respectively. Petitioners have conceded two of the issues raised by their pleadings. The remaining issue for decision is whether petitioners received gross income to the extent that petitioner-husband's employer paid the cost of petitioners' personal residence while they *389 were located in Japan. This case is fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.
Philip H. and Cherie M. Stephens, husband and wife, were legal residents of Tokyo, Japan, at the time they filed their petition. They filed their joint Federal income tax returns for the calendar years 1970 and 1971 with the Office of International Operations. Philip Stephens (hereinafter Philip), who was transferred to Japan by his employer Ampex Corporation, moved there with his family on March 23, 1970. During the portion of 1970 that petitioners resided in Japan, Philip's employer paid rental on the living quarters occupied by petitioners in the amount of $6,250. Ampex Corporation (hereinafter Ampex) retained $1,773.50 of Philip's salary as rental reimbursement. Petitioners did not report any of the difference between what Ampex paid and what Ampex retained from Philip's salary on their 1970 income tax return. Rental during 1971 was $10,299.55. Ampex paid that amount and retained $3,024.64 of Philip's salary. Again petitioners did not report any portion of the difference as additional compensation on their 1971 income tax return. The Commissioner in *390 his Notice of Deficiency "determined that non-cash remuneration in the form of housing provided by * * * [Philip's] employer * * * [was] compensation for services rendered and taxable" to petitioners. Petitioners argue that they received no economic benefit from Ampex, that in fact, they experienced "a net loss in material well being" because they spent more for housing than they had in the United States, yet lived in less desirable quarters. They further assert that they paid a fair amount for the quarters which were less comfortable, less attractive and smaller than their former United States home. In conclusion they argue that Tokyo's inflated rates created a situation dissimilar to the United States and that, therefore, regulations "established under the economic conditions of the U.S." are unrealistic for their situation. The Commissioner, on the other hand, points to the broad concept of gross income embodied in Code section 61 [1] and to petitioners' specific situation contained in section 1.61-2(d)(3), Income Tax Regs., to justify the inclusion of Ampex's rental payments in petitioners' gross income. [2] Section 61(a) states: Except as otherwise provided in this subtitle, *391 gross income means all income from whatever source derived * * * and section 1.61-2(d)(3) "Meals and living quarters," Income Tax Regs., states: The value of living quarters or meals which an employee receives in addition to his salary constitutes gross income unless they are furnished for the convenience of the employer and meet the conditions specified in section 119 and the regulations thereunder. * * * We are sympathetic with petitioners' dismay at the inflated rents in Tokyo and with their feelings that they received no benefit from the additional rent which Ampex paid. However, as pointed out by petitioners, quarters reasonably equivalent to their American style of living were not available at American prices. If Ampex had not paid the additional rent and if petitioners had wanted to live in such quarters they would have had no choice but to pay the inflated rent. Ampex's payments made it possible for them to live in reasonably acceptable quarters. Therefore, we conclude that the *392 payments were a financial benefit to petitioners within the meaning of section 61. See Commissioner v. Smith,324 U.S. 177 (1945) at 181, Commissioner v. LoBue,351 U.S. 243 (1956). Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated. ↩
2. Petitioners conceded in their brief that section 119 does not apply to their situation.↩