Raymond B. MITCHELL and Beverly Mitchell, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 76–2277.

United States Court of Appeals, Ninth Circuit.

Jan. 26, 1979.

Malcolm G. Smith (argued), Los Angeles, Cal., for petitioners-appellants.

Leonard J. Henzke, Jr. (argued), of Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HUFSTEDLER and TANG, Circuit Judges, and HALL,* District Judge.

HUFSTEDLER, Circuit Judge:

Appellants Raymond and Beverly Mitchell appeal from a decision of the Tax Court pursuant to Section 7482 of the Internal Revenue Code of 1954. The Tax Court held that the gain realized by appellants from the transfer of certain stock options constituted ordinary income; appellants contend that it was a capital gain. We affirm the Tax Court.

On September 21, 1961, Raymond Mitchell received a five-year option to purchase 2,353 shares of the common stock of his employer, the Western Rubber Corporation, at $22 per share. Western subsequently was consolidated into Amerco, Inc. Mitchell retained his position in the corporation and his Western option was converted into an option to purchase 22,137 shares of Amerco stock at $2.34 per share.

On May 3, 1966, Amerco stockholders agreed to sell their stock to Royal Industries, Inc., for $4.00 per share. Mitchell surrendered his Amerco option to Royal, and he retained his corporate position at a salary $6,000 less than he had received previously. In return for the salary reduction and surrender of the Amerco option, Royal granted Mitchell a five-year option to purchase 10,000 shares of Royal stock at $12 per share. Mitchell agreed, as a condition of the option, to remain in Royal's employ for at least one year.

Mitchell terminated his employment with Royal in October, 1967. He subsequently sold his Royal option to a third party for $190,000. During 1968, Mitchell received $55,100 in installment payments for the sale of the option.

On their 1968 joint tax return, Mitchell and his wife reported the $55,100 as a long-term capital gain. The Commissioner of the Internal Revenue Service sent Mitchell a notice of deficiency based on the contention that the $55,100 should have been treated as ordinary income. The Tax Court sustained the Commissioner's position and this appeal followed.

I

■ Under applicable Treasury Regulations, the tax treatment of employee stock options depends upon whether the option "has a readily ascertainable fair market value when granted." (26 C.F.R. § 1.421–6.[1] *See Commissioner v. LoBue* (1956) 351 U.S. 243, 249, 76 S.Ct. 800, 100 L.Ed. 1142.) Options with a readily ascertainable value are treated as income when issued (26 C.F.R. § 1.421–6(c)(1)) and any change in value subsequently realized is treated as a capital gain or loss. (26 C.F.R. § 1.421–6(a)(3); 26 U.S.C. § 1234(a).) Gains from the sale of options that were without a readily ascertainable value when issued are treated as ordinary income. (26 C.F.R. § 1.421–6(d)(3).[2])

■ The Treasury Regulations provide guidelines for determining whether a stock

---

* Honorable Peirson M. Hall, Senior United States District Judge, Central District of California, sitting by designation.

1. Section 1.61–15 of the Treasury Regulations on Income Tax, 26 C.F.R. § 1.61–15(a), provides that stock options granted as compensation are governed by the rules contained in section 1.421–6. *See also Commissioner v. Smith* (1945) 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830. The Tax Court correctly held that the entire Royal option was compensation to Mitchell. The Tax Court determined that part of the option was granted in lieu of Mitchell's salary while the remainder of the option was granted in exchange for the Amerco option, which itself was a compensatory stock option.

Section 1234 of the Internal Revenue Code was not applicable to this case because the Royal option fell within the exception of section 1234(d)(2), now contained in section 1234(a)(3)(B). *See* 26 C.F.R. § 1.1234–1(e). Nor does the option at issue here fall within the class of "restricted stock option" plans to which Congress has granted special tax benefits. 26 U.S.C. § 424.

2. Section 1.421–6(d) of the Treasury Regulations provides in pertinent part: "if the option does not have a readily ascertainable fair market value at the time it is granted, the employee in connection with whose employment the option is granted is considered to realize compensation includible in gross income . . . ." 26 C.F.R. § 1.421–6(d).

option has a readily ascertainable market value when granted. The regulations provide that "value is ordinarily not readily ascertainable unless the option is actively traded on an established market." (26 C.F.R. § 1.421–6(c)(2).) The Royal option at issue was not actively traded on an established market. Nevertheless, the value of an option can be considered "readily ascertainable" if the value of the option privilege can be measured with reasonable accuracy and if a number of other conditions are satisfied. (26 C.F.R. § 1.421–6(c)(3).) These conditions include the following: "(a) The option is freely transferable by the optionee; (b) The option is exercisable immediately in full by the optionee; (c) The option or the property subject to the option is not subject to any restriction or condition . . . which has a significant effect upon the fair market value of the option or such property." (26 C.F.R. § 1.421–6(c)(3)(i).)

▪ The Royal option clearly did not fulfill these conditions. The option was subject to the restriction that Mitchell remain in Royal's employ for a period of one year. The Tax Court properly found that this "restriction is significant, it casts doubt over the value of the option, and renders us unable to ascertain the option's value with reasonable accuracy." (65 T.C. No. 93, at 21 (March 4, 1976).) Thus, under applicable Treasury Regulations, the Royal option did not have a readily ascertainable value when granted.

## II

Appellants concede that the Royal option did not have a "readily ascertainable fair market value" within the meaning of the Treasury Regulations. Appellants argue, however, that they are entitled to use an alternative method of valuation based on the Supreme Court's decision in *United States v. Davis* (1962) 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335. In *Davis* the Supreme Court measured the amount of a taxable gain by reasoning "that the values 'of the two properties exchanged in an arms-length transaction are either equal in fact, or are presumed to be equal.'" (370 U.S. at 72, 82 S.Ct. at 1194.) Mitchell argues that because the Amerco option was exchanged for 60 percent of the Royal option, the value of the Royal option could have been mathematically determined if the Tax Court had not erroneously rejected his evidence about the value of the Amerco option.

We need not determine whether the Tax Court's findings of fact were correct, for we hold that Mitchell was not entitled to use the alternative method of valuation applied in *Davis*. The *Davis* method of valuation was used by the Supreme Court only as a last resort to prevent taxable exchanges without readily ascertainable values from escaping taxation altogether.[3] Although the value of the Royal option was not readily ascertainable at the time it was granted, it can be determined with precision at the time it was sold. Unlike the situation in *Davis* we need not "make a rough approximation of the gain" at the time the Royal option was issued in order to avoid "ignor[ing] altogether its tax consequences." (*United States v. Davis, supra,* 370 U.S. at 72–73, 82 S.Ct. at 1194.)

Moreover, it is questionable that the *Davis* method could produce an unambiguous valuation of the Royal option under the facts of this case. In order for the *Davis* method to be applied, it is necessary to have precise knowledge of the value of all consideration tendered by one of the parties to a two-party exchange. Even if we assume *arguendo* that the values of the Amerco option and Mitchell's salary reduction can be determined with precision, it does not follow that we can readily ascertain the value of the entire consideration offered by Mitchell in exchange for the Royal option. Mitchell also gave up the right to leave Royal's employ for a period of one year and the value of this portion of the consideration cannot readily be determined.

**3.** "However, once it is recognized that the transfer was a taxable event, it is more consistent with the general purpose and scheme of the taxing statutes to make a rough approximation of the gain realized thereby than to ignore altogether its tax consequences. Cf. *Helvering v. Safe Deposit & Trust Co.*, 316 U.S. 56, 67, 62 S.Ct. 925, 930, 89 L.Ed. 1266 (1942)." *United States v. Davis* (1962) 370 U.S. 65, 72–73, 82 S.Ct. 1190, 1194, 8 L.Ed.2d 335.

The Tax Court correctly determined that the gain realized by appellants constituted ordinary income.

AFFIRMED.

PEIRSON M. HALL, District Judge, concurring:

Somehow or other it does not seem quite right that the Appellant is denied the advantage which he anticipated when he took a reduction of $6,000 a year in salary in consideration of securing in return therefor an advantage of capital gains tax over ordinary income tax.

But, the option was clearly subject to the restriction and condition that Mitchell remain in Royal Industries, Inc.'s employ for at least a year, and the Tax Court has concluded that that condition had "a significant effect upon the fair market value of the option." The uncertainties of life alone which go with such an executory contract restrict the present market value of the optioned stock. That finding is not clearly erroneous and should not be disturbed.

I concur in the results.