798 F.2d 469
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ESTATE OF James C. AKERS, Estelle L. Akers, Executrix; and
Estelle L. Akers, Petitioner-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 84-1843.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1986.
 
 Before JONES and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Estelle L. Akers, personally and as executrix of the estate of her deceased husband, James C. Akers, appeals the ruling of the tax court assessing a tax deficiency for 1976 based on income realized on the exercise in that year of an option to purchase a house. Because the tax court failed to apply a controlling regulation to determine the tax consequences of the option, we reverse and remand for further findings.
 
 
 2
 James Akers was the first director and engineer for the Davidson County, Tennessee, Highway Department, a position he held until his retirement in 1955. While there he pioneered the use of modern emulsified asphalt on highways in place of traditional hot asphalt. Prior to his retirement, his soils William and J. Clark Akers Ill formed a company that manufactured emulsified asphalt. James Akers joined this company on his retirement. In 1959, the sons' company, then called the Globe Company, Inc., granted an option to James and Estelle on a house in Nashville, which the company had just purchased for $21,500. By the terms of the option James and Estelle were permitted to rent the house for their joint lives at a cost of $100 per month plus maintenance expenses. At any time during the occupancy they could purchase the property for $22,500, which was $1,000 more than the Company's initial cost, and they would be given credit for one half of all rentals previously paid. James Akers died in 1976, and on December 31 of that year Estelle Akers exercised the option by purchasing the house for a cash price of $12,000. As of that date the fair market value of the property was $43,000. The 1976 tax return for James and Sec. $eEstelle listed no income from this transaction.
 
 
 3
 The Commissioner asserted a deficiency against James' estate and Estelle contending that both the sale and the 1976 rental were bargains supplied by the company by virtue of James' employment and resulted in income to James and Estelle. Specifically, the Commissioner determined that the fair rental value for the property in 1976 was $375 per month rather than $100, resulting in $3,300 in income for the year, and that the fair market value of $43,000 at date of sale meant that a purchase for $12,000 resulted in income of $31,000. This resulted in a tax deficiency of approximately $13,000. Estelle Akers filed a petition with the tax court contesting the deficiency. The court ruled in favor of the Commissioner and this appeal followed.
 
 
 4
 The disagreement between the Commissioner and Mrs. Akers centers on whether the bargain element of this option is taxable on exercise of the option in 1976 or was taxable on the grant of the option in 1959, which would relieve the petitioners of tax liability.
 
 
 5
 This option is not governed by either of the two provisions of the Internal Revenue Code that control the treatment of options granted to employees. Section 421 of the Code, 26 U.S.C. 421 (1982), concerns the transfer of an employer's stock to an employee pursuant to certain options or purchase plans defined in sections 422-425, 26 U.S.C. Sec. $ef Sec. 422-42 5; it does not apply to transfers of property other than stock. Section 83 governs all other types of employee options, 26 U.S.C. Sec. $ef Sec. $e83(e)(1), (3), & (4), but not if the option was granted before April 22, 1969. See 26 U.S.C. Sec. $ef 83(i)(2).
 
 
 6
 The Secretary, however, has promulgated a regulation that governs the option at issue in this case. Treasury Regulation section 1.421-6, 26 C.F.R. 1.4216 (1985), applies generally to employee options to purchase stock of the employer or other property, Sec. 1.421-6(a)(1), that were granted between February 26, 1945, and July 1, 1969. Sec. 1.421-6(a)(2). The substance of the regulation is essentially that of existing case law. See Commissioner v. LoBue, 351 U.S. 243 (1956); Commissioner v. Smith, 324 U.S. 177 (1945).
 
 
 7
 Under the regulation, if an option had a "readily ascertainable fair market value" 'when granted, any bargain realized on exercise of the option is not taxable even if no taxable income was reported in the year the option was granted. Sec. 1,412 1.421-6(a)(3). Conversely, if the option did not have a readily ascertainable fair market value when granted, the employees taxed on the difference between fair market value of the property and the option price paid when the option is exercised. 1.421-6(d). The regulation provides that the value of an option "is ordinarily not readily ascertainable unless the option is actively traded on an established market." 1.421-6(c)(2). If it is not so traded, the taxpayer who wishes to show that the option did have a "readily ascertainable value" m ust show the existence of four conditions:
 
 
 8
 (a) The option is freely transferable by the optionee;
 
 
 9
 (b) The option is exercisable immediately in full by the optionee;
 
 
 10
 (c) The option or the property subject to the option is not subject to any restriction or condition (other than a lien or other condition to secure the payment of the purchase price) which has a significant effect upon the fair market value of the option or such property; and
 
 
 11
 (d) The fair market value of the option privilege is readily ascertainable in accordance with subdivision (ii) of this subparagraph.
 
 
 12
 Sec. 1.421-6(c)(3Xi). The "option privilege" is defined as the "opportunity to benefit . . . from any increase in the value of property" during the option period, "without risking any capital." Sec. 1.421-6(c)(3Xii). Three factors must be considered in determining whether the option privilege has a readily ascertainable fair market value:
 
 
 13
 (a) Whether the value of the property subject to the option can be ascertainable; and
 
 
 14
 (b) The probability of any ascertainable value of such property increasing or decreasing; and
 
 
 15
 (c) The length of the period during which the option can be exercised.
 
 
 16
 Id.
 
 
 17
 The tax court made none of the findings required under this regulation or the case law on which it is based because the court ruled that the option was unenforceable under Tennessee state law. The Commissioner now concedes that this ruling was in error but urges us to hold that Mrs. Akers has failed to meet her burden of proving the facts listed in the regulation as a matter of law. We decline to so hold on the basis of the record before us. It is important and more appropriate, we think, for the tax court to make these complex factual determinations in the first instance. We note, for example, that at oral argument, counsel for the government could not say with certainty that the option was or was not transferable by the Akers. This and other uncertainties should be considered first by the trial court. The fact that, inexplicably, neither party argued the applicability of section 1.421-6 until the question was raised by this court at oral argument also impels us to remand. Mrs. Akers argues that the regulation exceeds the reach of existing case law and the Secretary's authority. This issue should be considered first by the tax court as well.
 
 
 18
 The judgment of the tax court is REVERSED and the cause REMANDED for further proceedings consistent with this opinion.